The STATE of Ohio, Appellant,

v.

MORALES, Appellee.

[Cite as *State v. Morales* (1993), 92 Ohio App.3d 580.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65267.

Decided Dec. 27, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Louis J. Brodnik,* Assistant Prosecuting Attorney, for appellant.

*Jaime P. Serrat,* for appellee.

---

*Per Curiam.*

This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 25, the records from the court of common pleas and the brief and oral argument of counsel.[1]

The state of Ohio ("state") appeals from defendant-appellee Juan Morales' motion to suppress illegally seized evidence. For the reasons adduced below, we reverse and remand.

The facts are as follows: Detective Brian Heffernan of the Cleveland Police Department's Second District Vice Unit testified that, during the time he has been a police officer, he has made over seven hundred drug-related arrests. He stated that the area which he patrols, located in the Second District, is known for the sale of heroin. Detective Heffernan testified that, at the time of defendant's arrest, the police station had received "numerous and bitter complaints" of street drug sales. In response to these citizen complaints, he and his partner, Detective Bernard Norman, were patrolling the area in an unmarked police vehicle at approximately 2:15 p.m. when Detective Heffernan noticed defendant in the driver's seat of a car which was conspicuously stopped in the middle of the road on a two-way street. Defendant was the only occupant of the car.

As the detectives approached this stopped vehicle, they noticed another male leaning into defendant's car through the passenger-side window. Detective Heffernan was close enough to observe the male's leaning into the window and identified him as one Romero Delgado. Detective Heffernan knew Delgado, as he had arrested him on prior occasions for violations of the drug law. He further had personal knowledge that Delgado was a drug user and drug dealer.

As Detective Heffernan began an even closer approach to defendant's vehicle, he could see Delgado and defendant leaning towards each other. He further stated that the weather conditions were clear and there was nothing obstructing his vantage point, which was approximately forty feet behind defendant's vehicle.

Detective Heffernan testified he observed Delgado pull out of the window and notice that police were directly behind them. Delgado was then observed reaching back into the car and then fleeing on foot. Detective Norman pursued

---

1. Defendant-appellee did not file a brief or otherwise respond to the within appeal.

Delgado on foot as Detective Heffernan activated his lights and siren and took off after defendant attempting to pull the car over.

Defendant went through a stop sign and proceeded slowly down the street. Simultaneously, and following the same path, Detective Norman was chasing Delgado. Detective Heffernan testified he saw Delgado put something into his mouth during the chase. Detective Heffernan was approximately twelve feet from Delgado when he observed this.

After he passed Delgado and Detective Norman, and while he was in pursuit of defendant, he observed defendant make furtive gestures, reaching his hand down and putting something in his mouth several times. Detective Heffernan testified he thought that defendant was either trying to eat evidence or reach for a weapon. Thereafter, defendant ran another stop sign and proceeded on without heeding the police vehicle's siren and flashing lights.

Detective Heffernan was forced to drive in front of defendant's vehicle and cut him off in order to get him to stop. Thereafter, defendant was placed under arrest and taken out of his car. He was patted down for weapons. As Detective Heffernan was placing handcuffs on defendant, he discovered a crumpled twenty dollar bill in his hand; a straw in his pocket which later proved to contain heroin; over seven hundred dollars on his person; and a pager on his belt. Delgado was also captured and arrested.

Defendant was arrested and subsequently indicted for one count of violating the drug law (R.C. 2925.03), one count of drug abuse (R.C. 2925.11), and one count of possession of criminal tools (R.C. 2923.24).

The state appeals the trial court's grant of defendant's motion to suppress illegally seized evidence.

## I

The state contends that the within search was subsequent to a lawful arrest. Defendant argued in his motion to suppress that Detective Heffernan did not have an articulable suspicion that criminal activity was afoot pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. We disagree.

In this case, Detective Heffernan first possessed a reasonable and articulable suspicion that criminal activity was afoot even before the slow-speed chase. This reasonable suspicion gave rise to probable cause and was further enhanced by the conduct of defendant and Delgado during the slow-speed pursuit that justified the detective's decision to stop, search and arrest.

## II

"The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.

Probable cause exists when the facts and circumstances within the officer's knowledge would warrant a person of reasonable caution to believe that a crime has been committed. See *Carroll v. United States* (1924), 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555; *State v. Kessler* (1978), 53 Ohio St.2d 204, 7 O.O.3d 375, 373 N.E.2d 1252. The inquiry into probable cause is not technical, but deals with probabilities and the "practical considerations of everyday life." *Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890; see, also, *Illinois v. Gates* (1983), 462 U.S. 213, 231–232, 103· S.Ct. 2317, 2328–2329, 76 L.Ed.2d 527, 543–544.

Hence, a police officer may conduct an investigative stop of an individual where, under the totality of the circumstances, the officer has a reasonable basis to suspect criminal activity. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; *State v. Bobo, supra.*

Moreover:

"The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

" * * *

"The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *United States v. Cortez* (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629.

Applying these principles to the facts of this case, Detective Heffernan possessed sufficient objective facts to support a particularized articulable suspicion that defendant was engaged in criminal activity even prior to defendant's being chased. Moreover, during the slow-speed chase, the gestures made by defendant, as well as the fact that he was not stopping, also gave rise to probable cause.

■ Detective Heffernan testified that bitter citizen complaints had been lodged with police regarding the heavy drug trafficking in the area where defendant's stopped car was located. Based upon the detective's experience and training as an officer involved in over seven hundred drug arrests, the parked vehicle aroused his suspicions. Defendant's vehicle was parked in the middle of a two-way street and defendant was observed leaning towards the passenger side where another male, Roman Delgado, was standing. Delgado was recognized by Detective Heffernan, as the detective had arrested him on prior occasions for drug-related offenses. Delgado was also known to the detective as a known drug dealer and drug user. Immediately after Delgado was recognized, he pulled out of defendant's vehicle momentarily. Delgado then reached back in the car and fled on foot.

These facts, taken together, gave rise to a reasonable and articulable suspicion that a crime had been committed. However, during the slow-speed pursuit, other actions of defendant and Delgado gave the detective probable cause to stop, search and arrest.

■ Detective Heffernan testified that he saw Delgado, as he was running from Detective Norman, put something into his mouth. This gives further rise to the inference that a drug deal had just been consummated.

Also, defendant's refusal to heed the warnings to stop, and his actions of crashing through stop signs, only bolster the state's case that criminal activity was afoot. Incidental to the central issue is that defendant violated traffic rules during the chase. Defendant did not stop until forced to do so by the detective's vehicular maneuver. Significantly, during the slow-speed pursuit, Detective Heffernan saw defendant reaching down with his hands perhaps hiding a weapon or disposing of drugs by putting them in his mouth. These furtive gestures, together with the other circumstances detailed above, constituted probable cause.

Under the totality of the circumstances, Detective Heffernan did not violate defendant's Fourth Amendment rights.

The state's sole assignment of error has merit.

Judgment reversed and remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

NAHRA, P.J., PATTON and JOHN F. CORRIGAN, JJ., concur.